In re Amadeus Therapy, Gerald Shelley, counsel for Appellant NAI Horizon, Carmen Chanal Horne, counsel for Appellee Amadeus Therapy, Inc. All right. Mr. Shelley, would you like to reserve any time for rebuttal? I would, Your Honor. I would like to reserve three minutes for rebuttal. All right. Please begin. But as a courtesy to my opposing counsel, I'd also like to indicate that there is a motion to dismiss this appeal for mootness that's pending. And when we emailed yesterday with the clerk, the clerk advised us to be prepared to argue it if necessary. So I'm simply asking the court, maybe that's a matter being handled by your clerks, and you're simply expecting argument on appeal. Or if you are expecting argument on the motion to dismiss the mootness, then I ought to defer to Ms. Chanal, whose motion it is. No. You may just proceed and deal with that in your argument, Mr. Shelley. And that's going to be part of our decision process. We'll handle the motion to dismiss in our decision. Okay. I will do so. I'll address that. I'll begin and I'll address that very briefly. In terms of the motion to dismiss for mootness, Your Honors are well aware that the Ninth Circuit standard for that is whether or not the appellate court can afford relief to the appellant. And in this instance, we have a claim at the bankruptcy court for which about $105,000 was reserved. The plan has been confirmed below, and the $105,000 has been paid out to special counsel and to bankruptcy counsel. And in each instance where distributions were made, we objected, indicating that there was an appeal pending. And we have language in each of the distribution orders which indicate the reservation of rights. I would simply point out that the relief we're looking for is the ability to have counsel disgorge those dollars that were paid, but were paid with the specific reservation that if the appeal is reversed, that those distributions are subject to being revisited. I'd also simply note that the cases that MVMT has cited are all 363-related cases where sales were approved and no stay was obtained pending appeal, and so the sales were consummated. This, in my mind, is an entirely different matter and setting and fact pattern, and I think that there is ample relief that can be afforded to us in the event that there's a reversal. That said, unless there are any questions, I'll move on to the subject of the appeal. Your Honors, this is an appeal under Bankruptcy Rule 90-24 as adopts Federal Rule of Civil Procedure 60-D-3. And I bet we don't see this type of motion very often. It's the first time in a lengthy career I have made a motion that alleges fraud on the court. But what we have here is a situation where, and the story is most easily told, I think, if you go to appellant's reply brief, in particular, the appendices. And I'd like to start first with Appendix 1, which is the minute entry that sets forth, that takes this matter to a trial. And you'll see that this is dated October 26th, and we're asking for a one-day trial in February. Mr. Shelley, let me interrupt you.  Because we're really just reviewing the 60-D ruling here. We're not looking at the trial, right? Well, what I'm trying to weave into here, the problem that we have is we have a doctored letter that is given to the court as evidence of illness in the absence of any response to a 2004 order that requested all medical records related to the alleged illness. That happened, and the motion was reconsidered, and it also was taken up on appeal to the district court. And I think in both of those instances, the finding was, no, the judge had the ability, based on the record, to find that there was sufficient evidence, whether it was by preponderance or by clear and convincing, to find that the principal of the debtor, Bridget O'Brien, was in fact ill, and her illness was the reason why the deed should never have been delivered. Now, the reason we're here under Rule 60 is because a little more than a year after the ruling, the doctor, whose doctored letter was presented to the court, came forward and signed a declaration, and the declaration is Appendix Number 4. And in that document, the declaration, the doctor makes it very clear, I'm not an MD, and the doctored letter that was provided to the court said I was an MD. Number two, I never made a diagnosis of cancer. Number three, I treated certain things, but what I treated were based upon what I heard from the patient. There's zero corroboration with any other medical doctor. So our argument here is, we ask on a timely basis, under Rule 2004, to have all medical records related to the alleged illness turned over. And on the deadline for response to 2004, the only thing we got was the inauthentic doctored screenshot letter that is Appendix 3. Well, based on that and the principal's testimony of her journey of illness, Judge Martin, Bankruptcy Court Judge Martin, was able to find, and I don't think unreasonably so, but was able to find that there's enough evidence here to suggest that she was ill at the time that the deed was drawn up, and that the party that recorded the deed should never have recorded it. And accordingly, pursuant to the law that we all learned in Property 101, a deed is not complete until it's delivered. We had argued that the deed was physically delivered and was recorded, and the case law makes it clear when the deed is recorded, the party attacking the deed has to overcome the presumption by clear and convincing evidence. And we went back to Judge Martin after we got the second, the declaration from Dr. Wooten and said, wait a minute, we clearly have a doctored letter in the first place, an inauthentic letter. Is it really inauthentic, counsel? Let's dive into that a little bit, because you keep saying it's inauthentic and it's fraud. As explained, it's a letter. The letter was the letter. It sounds like you have asked for an inference that there was a diagnosis that this natural, you know, naturopathic doctor actually diagnosed. There's a fair reading, it seems from the record, that that is not exactly what that letter said, nor is it what the second letter says, right? That she was told by the debtor as a patient that she had cancer and was being treated for that, and then the doctor provided services within her realm based upon that information. That is wholly different, especially on appeal, isn't it, than saying it seems like you are asking the Bagsby Court to make the inference that the first letter said that Dr. Wooten diagnosed the cancer and it is error not to. Is that really your argument? No, it's not the argument, because Judge Martin ruled that based on the testimony of the debtor's principal that she found there was sufficient evidence to find that the illness, in fact, existed. And why is that insufficient? I'm sorry, Judge Corwin. I was going to say, if that's what they found, the letter doesn't matter. The judge was basing the conclusion on the debtor's testimony. And also, I just want to point out this bit about the second doctor being an NMD instead of an MD. It was made clear at the trial, wasn't it, counsel, that the second doctor was a naturopath. Everybody knew that. I think we argued that. I think we let the judge know that we found that. So the first letter is actually a screenshot that Ms. O'Brien testified she put together. And so that's why I called this letter inauthentic. It wasn't. The second piece, the second letter comes out and doesn't say, I want to refute or I want to change. I want to clarify. Doesn't it start with, I want to clarify? I don't know if it starts that way, but that was the intention. At this point, Dr. Wooten, same doctor as in the letter, call it letter number one, came forward and said, look, I want to make sure that there's not a misunderstanding here, and I'm happy to put together a declaration. So this declaration followed that. As I read this declaration, it says, I'm not an MD, I didn't prepare that first letter, I did treat her, and I treated her based on what she told me her illness was. The point I'm trying to make with both of these letters is they're a little fishy. And in light of having ignored the 2004 order entirely. All right. Mr. Shelley. I'm sorry. Mr. Shelley, does fishy count for fraud on the court? It would if this court follows my simple request for a remand with instructions to ask Ms. O'Brien, give her 30 days, 60 days, 90 days, give her six months to respond to the 2004 order. And if she comes forward, as I indicated in our brief, if she comes forward with authentic medical records corroborating her illness, then this case is over. We don't have anything more to argue. What I'm trying to say is the real gravamen of this case is not so much the doctor's first letter or the declaration, it's the failure to wholly respond to the 2004 order. And it seems to me that. Shouldn't that have been addressed before trial? It was addressed. The trial came on so quickly under the circumstances that are set forth in our brief. We asked for a hearing in February. They asked for a hearing in December because opposing counsel had just run for superintendent of schools and was afraid he was going to take office in January. So the whole thing was truncated. I argued at the time at trial that the 2004 order was not complied with. I argued in our post-trial briefs. Counsel, I don't want to interrupt you, but clarify something for me. If there was something done wrong at trial that the other party did not respond to the 2004 examination and so forth, isn't that an issue that should have been appealed within the 14 days? It is an issue that was appealed within the 14 days, and it went to the district court, and the district court found that based on the failure to provide a transcript and based on the record, that there was sufficient evidence for the judge to rule the way that she did. And the district court order wasn't appealed. That was not appealed. That's correct. The district court ruled on the 2004 issues because those were the issues at trial. Those are not before us today. Today it's the fraud on the court, subsequent motion. Well, I'm out of time, but I'll conclude this and then come back. What we're arguing here is that using the first letter is curious. Okay, fishy may not be the standard, but it's sufficient. The declaration makes it clear that there's a problem here. And that, in light of the wholesale failure to respond with even a single piece of corroborated medical evidence, seems to me that that's a basis under 60D3 to come back and say, wait a minute, we better take a good look at this. If she says she was ill, there's some questions about that based on the letters and based on the failure to respond to the 2004 order. Let's give her time to respond to it. And as I said, we'll drop this appeal as soon as we see authentic medical records showing that she's ill. I didn't presume that that was the case. You know, you take people at their word and something as delicate as the alleged illness here is not something that you go into and say prove it. And then how do you prove a negative anyway, particularly in the absence of the documents that were requested? I'll step back and reserve the rest of my time. But that's our argument, that it really is the problem with the letter from the doctor, the declaration, in combination with the failure to respond to the 2004 order. And all of that was raised and argued. All right, you have about a minute left, so we'll let you reserve the rest. We think you should remand with instructions to give Ms. O'Brien whatever time she needs to come up with the corroborating medical evidence. All right, thank you. Thank you. All right.  We can't hear you. Okay, here we go. May it please the Court, Your Honor, Counsel. The appellant argues that the stay doesn't apply to our case. However, the appellant cites no cases holding that in the absence of a sale, the usual rule of obtaining a stay does not apply. They have no authority for that. And our position is that they should have obtained a stay. So you're arguing the motion to dismiss right now. Yes, because an appellant argued it in his oral argument. So I would like to bring up the points very quickly. Go ahead. Yes, Your Honor. Yes, so the motion to dismiss should be granted because NAI, the appellant, failed to follow the law by not seeking a stay pending this appeal. That's an absolute requirement? Yes. The cases holding this are cited on page 2 and 3 of our motion to dismiss. And very quickly, in matter of tooling, this circuit court held that when an appellant fails to obtain a stay of a bankruptcy court's order permitting the sale of assets and the assets are sold while the appeal is pending, the appeal becomes moot. And Reese Serso also cited on page 2 and 3 of our motion to dismiss. The court there, this circuit held that in conclusion, because the Serso's failed to obtain a stay pending appeal, their appeal to the district court of the bankruptcy court's order was moot. Isn't it only moot if we can't grant effective relief? And if money can be disgorged, can't we grant effective relief? I don't think so, Your Honor. I think that the rules are very clear that the appellant should have obtained a stay pending this appeal. I mean, there are so many cases stating that at page 2 and 3 of our motion to dismiss. So because appellant failed to follow the circuit court's rulings to obtain a stay, you know, the appeal should be dismissed. They haven't cited any authority contradicting that whatsoever in their response to our motion to dismiss. All right. Why don't you move on and address the substance of the appeal? Sure, Your Honor. Okay. So the only argument set forth in appellant's reply brief pertaining to the affidavit of Dr. Wooten is which that appeal, I mean, that motion, that Rule 60B motion was denied. That ruling on the Rule 60B motion states that nothing in the Wooten declaration indicates that there had been fraud at the original trial before that judge. The bankruptcy judge states at page 27 of her ruling, that's Appendix 4, that indeed it was made clear at trial that Dr. Wooten is a neuropathic doctor who treated Ms. O'Brien with neuropathic treatments that Ms. O'Brien sought out in addition to the traditional treatments she received from the other doctors. Because appellant didn't order a transcript, they cannot contradict the two orders that we're talking about. The two orders are attached as Appendix 3 and 4 to our answering brief. A review of the original letter that the trial court heard shows that nowhere in that letter does Dr. Wooten say that she gave traditional cancer treatments to Ms. O'Brien. All the references to traditional treatment are stated in the third person indicating that she, Dr. Wooten, is reciting history, not indicating what she did. She only gave neuropathic holistic treatment that she describes at the end of her letter. And there was a reference to MD that was described at trial as an autocorrect that was originally not typed as an MD. And the order, the trial order, February 14, 2023, Appendix 3, page 7 to our answering brief specifically holds that that was not intentional. It was not fraud. Timing, with respect to timing, this proceeding, the bankruptcy, opened on November 4, 2021. Appellant waited a full year before asking for discovery of medical records, one year. Their own appendix shows that they did not obtain an order for production until November 7, 2022, a year later, one full year later. Your Honors, we really ask the court to take judicial notice of the record on this case, including the bankruptcy judge's initial decision, the trial court judge initial decision at page 7, where she recites that Ms. O'Brien testified she attempted to respond to NAI's production request by contacting Mayo Clinic, where she has been treated two years prior, but was informed that they were extremely backed up and could not timely provide her records, which stated two years prior. The bankruptcy judge, the trial judge, found that the failure to provide those records was justified and was not deliberate. So, in other words, the trial court ruled that the failure for Ms. O'Brien, the appellee, to produce records was excused because she made attempts to do so. That is in her trial order. That's at appendix 4, page 7, paragraph 1. And also, in that order, it's interesting, Your Honors, because in that order, the judge says, NAI provided no information as to how this discovery issue played out. In other words, what do these letters have to do with the proof of claim? Nothing. It's irrelevant. So, because they cannot provide transcripts of the trial, appellant cannot now object to those findings. They can only look at the trial order. Well, I don't think they're not objecting to the finding. They're saying that there's fraud in the court based on the new Wooten declaration, which they say is inconsistent with the original screenshotted letter. So, you know, we don't really need a trial transcript to address that issue, do we? No, but the order denying the Rule 60B motion goes into that and states in there, it's appendix 4, page 7, paragraphs 1 and 2, you know, this new letter doesn't have any kind of indication of fraud. Also, Your Honor, I mean, they've had years to do this. They could have brought up that second letter at trial, perhaps produced it before they appealed to the trial. I guess their statement is they got the second letter later, not at the time of trial. I guess if they'd had it at trial, they would have brought it forward. But they didn't have it at the time of trial, did they? No, but he could. No, but I'm just going to go on, Your Honor, if I may. Go ahead. So they're arguing fraud on the court, and they're appealing the decision that Judge Martin says there is no fraud on the court, and I just don't see what argument they have in their opening brief or in their reply brief that shows that that letter indicates fraud on the court. There's nothing there. So because they didn't provide the transcripts at the trial, appellant cannot object to the findings of both the trial court order, which is Appendix 4 to our answering brief, or to the trial court order is Appendix 3 to our answering brief. That's February 14, 2023. Nor can they object to the ruling by Judge Martin on an appellant's Rule 60 motion denying that motion dated March 26, 2024. I don't see anywhere in their briefs where they can show that that letter is fraud on the court. Thank you, Your Honor. All right. Thank you. Any questions? No. All right. Mr. Shelley, you have a minute, a minute and nine seconds. Thank you. I'll be as brief as I can. The job of the Courts of Appeal, one of the jobs of Courts of Appeal is to keep the system as absolutely clean as possible. We're also taught about alpha errors versus beta errors, or the greater error or the lesser error. At 30,000 feet, the remedy we're asking for is really simple. You tell us that you went through years of medical procedures to cure this cancer, and you haven't given us a single authentic legal document to prove that. That, in combination with this odd, this is curious to have a screenshot that is clearly put together by the participant, and then a declaration that later says, well, there's some truth to that, but there's some problems with that. That's enough, we think, to remand this case for a very simple 30, 60, 90, 120 days, please comply with the 2004. Otherwise, what happens to the sanctity of a 2004 order? I think there's no teeth to it. That's what we're asking for here. Thank you for listening. All right. Thank you both for your arguments. This matter will be submitted. Madam Clerk, please call the next case.
judges: Brand, Spraker, and Corbit